UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:12-cv-398-GCM

| KRYSTAL M. WILLIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court upon Plaintiff Krystal M. Willis' ("Plaintiff's") Motion for Summary Judgment, (Doc. No. 11) filed on June 3, 2013, and Defendant Commissioner of Social Security Carolyn W. Colvin's Motion for Summary Judgment, (Doc. No. 13) filed on September 3, 2013. Plaintiff seeks judicial review of an unfavorable administrative decision on her application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**. Defendant's Motion for Summary Judgment is **GRANTED** and, accordingly, the Administrative Law Judge's ("ALJ") decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of February 15, 2003. (Doc. No. 7-21 at 5.) The claim was initially denied on July 7, 2011, and again upon reconsideration on September 1, 2011.

1

Subsequently, on October 25, 2011, Plaintiff timely filed a request for an administrative hearing and ALJ Marshall D. Riley held a video hearing on February 3, 2012.

On February 29, 2012, the ALJ issued a decision finding that Plaintiff was not disabled at any time from her alleged onset date through her date last insured ("DLI") of March 31, 2006. (Doc. No. 7-21.) The Appeals Council denied Plaintiff's request for review on October 26, 2012, rendering the ALJ's decision of February 29, 2012 the final decision of the Commissioner (Doc. No. 7-3 at 1-5.) The Parties' motions are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, this Court "'must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)). This Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the Commissioner's final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was "disabled," as defined for Social Security purposes between February 15, 2003 through her date last insured of March 31, 2006.[1] On February 29, 2012, the ALJ found that Plaintiff was not "disabled" at any time between February 15, 2003 and the date of last insured. (Doc. No. 7-21.) The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and

(5) Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v).

In this case, the ALJ determined that Plaintiff was not disabled under the second step in the above evaluation process. (Doc. No. 7-21 at 7.) Particularly, the ALJ concluded that "the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore the claimant did not have a severe impairment or combination of impairments." (Doc. No. 7-21 at 7.)

On appeal, Plaintiff makes the following assignments of error: (1) that the ALJ erred at step two of the sequential analysis by finding that Plaintiff had no medically determinable severe impairments or combination of impairments, and (2) that the Appeals Council erred in failing to consider the opinion of Dr. Eric Peterson, M.D. when reviewing Plaintiff's claims. (Doc. No. 11-1.)

**1. The ALJ Did Not Err at Step Two by Finding that Plaintiff Had No Medically Determinable Severe Impairments or Combination of Impairments.**

The severity evaluation is a de minimis "threshold screening standard to eliminate frivolous claims at an early stage in the process." *Bowen v. Yuckert*, 482 U.S. 137, 180 (1987). A non-severe impairment is one that "does not significantly limit . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, and include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers, and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

An impairment is not severe "when medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work. SSR 85-28, *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). Additionally, if an ailment is controlled by medication or treatment such that it does not cause work-related limitations, the ailment is not to be considered severe. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Conversely, an impairment is severe if the medical evidence establishes that it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c), 416.920(c).

At step two of the sequential analysis, the ALJ found that Plaintiff did not have any severe physical or mental impairments that would impose significant work-related limitations. (Doc. No. 7-21.) The ALJ found the Plaintiff merely presented a multitude of complaints after various incidents that were resolved with appropriate treatment. (Doc. No. 7-21 at 19.) Such complaints included: shoulder and elbow pain after a skating fall, ankle sprains after jumping off the back of a truck, neck and shoulder strain, knee strain, back pain, abdominopelvic pain,

5

bruised fingers, and chest pain. (Doc. No. 7-21 at 11-15.) The ALJ also found that Plaintiff exhibited signs of drug use, intoxication, and depression. (Doc. No. 7-21 at 7-12.)

While the ALJ did not doubt that these medical impairments produced the alleged symptoms described by the Plaintiff, the ALJ found that her statements regarding the "intensity, persistence, and limiting effects" of the symptoms were not credible. (Doc. No. 7-21 at 17.) Thus, the ALJ found that the Plaintiff was only experiencing "mild limitations," none of which were severe enough to limit basic work activities. (Doc. No. 7-21 at 19.)

### a. Plaintiff's Physical Impairments.

The medical records consistently support the ALJ's decision. On August 1, 2003, Plaintiff reported that she injured herself while skating but that she still worked as a model and an exotic dancer during the relevant time period of February 15, 2003 to March 31, 2006. (Doc. No. 7-21 at 11.) On August 7, 2003, Plaintiff was seen in the emergency room for a left ankle sprain after jumping off the back of a truck, but the medical records show that she was permitted to begin bearing weight on the ankle in 24 to 48 hours. (Doc. No. 7-21 at 11; Ex. 37F.) In November 2004, Plaintiff was seen for knee strain, but according to medical records, Plaintiff had full range of motion and Plaintiff merely was told to take Ibuprofen, ice the knee, and limit her activities to what was comfortable for her. (Doc. No. 7-21 at 13; Ex. 47F.) In addition, on February 7, 2005 Plaintiff was diagnosed with acute lumbar strain, but told to simply ice and rest her back. (Doc. No. 7-21 at 48F.) A month later she was seen at the emergency room for complaints of chest pain. However, the ECG, chest-x-ray, CBC, and basic metabolic panel were all normal and Plaintiff claimed to feel better after she was given medication. (Doc. No. 7-21 at 14; 50F.) Plaintiff continued to be seen in the emergency room throughout the relevant time period for various physical conditions, but each time, medical records from the emergency room

6

reflect that she received the appropriate treatment and did not require any continuing treatment. The record is devoid of any medical evidence establishing that any of these physical impairments limited her ability to work during the relevant time period.

### b. Plaintiff's Mental Health.

Plaintiff's medical records again establish substantial evidence that Plaintiff was not suffering from any severe impairments during the relevant time period. With respect to evaluating mental impairments, the degree of functional limitation must first be established, which is done by examining four broad functional areas. § 404.1520a. These are nicknamed the "B criteria." These areas are: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) periods of decomposition. § 404.1520a(c)(3). As to the first three areas, the ALJ must determine whether the severity is none, mild, moderate, marked, or extreme and as to the last area, the ALJ must determine the number of times any "periods of decomposition" occurs. § 404.1520a(c)(4). While Plaintiff's medical records do show that Plaintiff suffered from some mental health issues beginning in October 2004 after her fiancé passed away from an overdose, her medical records also show that these were merely mild limitations in activities of daily living, social functioning, concentration, persistence, and pace and that she suffered no periods of decomposition during the relevant time period. (Doc. No. 7-21 at 19.)

For example, on October 18, 2004, Plaintiff was seen at the emergency room, presenting symptoms of suicidal ideation, alcohol intoxication, acetaminophen overdose, and opiate and amphetamine abuse. (Doc. No. 7-21; Ex. 43F.) She was released to her ex-husband and his wife, only to be hospitalized on October 27, 2004 until October 31, 2004 for severe depression, situational anxiety over the recent death of her fiancé, alcohol intoxication, and drug abuse.

(Doc. No. 7-21, Ex. 44F.) However, Plaintiff's medical records indicate that she was not at "acute risk" for suicide and was stable enough to be discharged from a psychiatric standpoint. (*Id.*) The doctor did not feel the need to admit her to the hospital, and noted that she said she wanted to go home and live for her children. (*Id.*)

Again, on November 10, 2004, Plaintiff was admitted to the hospital, but stated that she did not consider her drinking a problem, denied any family history of psychiatric treatment, denied any physical, emotional, or sexual abuse as a child, and reported no acute medical problems. (Doc. No. 7-21; Ex. 46F.) Records indicate that Plaintiff exhibited normal speech, her memory was intact, and she functioned with the normal range of intelligence for someone of her education level. (*Id.*) Further, Plaintiff presented no abnormal motor behaviors and denied auditory or visual hallucinations. (*Id.*) While her judgment was limited, she showed no suicidal tendencies and identified the death of her fiancé as a major life stressor. (*Id.*) Plaintiff stated that as time passed, she was adjusting better and had much to look forward to. (*Id.*) She was discharged on November 16, 2004, but then was hospitalized again the next day at Broughton State Hospital for recurring overdoses. (Doc. No. 7-21, Ex. 5F.) She was started on medication there and reported feeling much less depressed and denied symptoms of mania or psychosis. (*Id.*) She even stated that she was moving away from the loss of her fiancé and that "everything is perfect in [her] life." (*Id.*)

All of the medical records establish that Plaintiff was suffering from some mental health impairments during the relevant time period, but that she only experienced difficulties during a one-month span, after which Plaintiff herself denied any psychosis, depression, and even reported that she had discontinued her prescribed antidepressant because she no longer felt depressed and no longer wanted services. (Doc. No. 7-9 at 52.) There is substantial evidence

for the ALJ to have found that Plaintiff suffered no consistent workplace limitations due to her mental health, had no periods of deterioration or decomposition, and merely experienced mild limitations with respects to daily living, social functioning, and maintaining concentration, persistence, and pace.

### c. State Agency Consultants Support ALJ's Decision.

George Grubbs, Psy.D., a non-examining psychological consultant, reviewed the record and determined that there was "insufficient evidence" to substantiate the presence of a mental disorder or to establish any limitations with respect to Plaintiff's Paragraph B criteria. (Doc. No. 7-4 at 18.) The second psychological consultant, Michael Rapp, Ph.D., also found that there was "insufficient evidence" to establish any limitations with respect to Plaintiff's Paragraph B criteria. (Doc. No. 7-4 at 8-9.) Both of the consultants found that Plaintiff was unable to establish any workplace limitations; thus, their opinions support the ALJ's determination that Plaintiff's mental impairments were not severe. *See Hensley v. Colvin*, No. 2:11-cv-56, 2013 WL 4010580, at *4 (W.D. Va. Aug. 5, 2013) (holding that the claimant failed to establish her mental impairments as severe because the claimant failed to establish proof of any resulting workplace limitations); *see also* 20 C.F.R. § 404.1527(e); SSR 96-6p, 1996 WL 374180 (S.S.A. July 2, 1996) (stating that the opinion of a non-examining state agency medical source, insofar as it is supported by evidence in the case record, is recognized as that of a highly qualified physician who is an expert in the evaluation of medical issues in disability claims under the Act.); *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (holding that the opinion of a non-examining medical expert may be relied upon where it is consistent with the record).

Plaintiff contends that it is error to rule that there are no severe impairments based on the doctors' findings of merely "insufficient evidence"; however, Plaintiff has not provided any

9

authority to support this argument and the Court finds it unpersuasive. The determinations of these doctors are consistent with the record and support the determination of the ALJ that in fact Plaintiff's mental impairments were not severe.

The physician who examined Plaintiff for her consultative physical evaluation, Dr. Stephen Burgess, M.D., PhD., found that Plaintiff's cognition was normal to borderline normal and presented no evidence of suicidal ideation, hallucinations, delusions, or paranoia. (Doc. No. 7-9 at 105.) While Dr. Burgess did note that Plaintiff had some mental health impairments, he did not perform an extensive medical examination, and concluded that Plaintiff was able to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, pushing and pulling heavy objects, as well as the ability to hear and speak. (Doc. No. 7-9 at 105.) Dr. Burgess' consultative examination does not undermine the ALJ's severity determination, but rather it supports the determination. While Dr. Burgess noted that Plaintiff may have some mental health impairments, he found no evidence to suggest that these potential mental impairments are severe enough to limit Plaintiff's basic work activities. Further, Dr. Burgess' examination supports the ALJ's determination that Plaintiff is able to physically perform many work related activities, such as the activities listed above, and is not suffering from any severe impairments.

**2. The Appeals Council's Failure to Consider the Opinion of Dr. Peterson Does Not Warrant Reversal of the ALJ's Decision.**

Plaintiff argues that this Court should reverse the ALJ's decision because the Appeals Council did not consider examinations by Dr. Eric W. Peterson, M.D., which were performed after the ALJ made his decision. Plaintiff cites two Fourth Circuit decisions in support, *Moore v. Finch*, 418 F.2d 1224 (4th Cir. 1969) and *Bird v. Commissioner of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012), but both *Moore* and *Bird* are readily distinguishable from this case. *Moore*

and *Bird* each dealt with evidence that was in existence, in the record, and considered by the ALJ— not any new evidence. In both cases, the courts held that the ALJ erred by not examining whether reports and examinations *in the record before him* were linked to the relevant time period. *Moore*, 418 F.2d at 1226; *Bird*, 699 F.3d at 342-43. Here, Dr. Paterson's medical report had not been created at the time the ALJ decided Plaintiff's case. The ALJ hearing was in February 2012, while Dr. Peterson's medical report was not prepared until June 2012, four months later. Because this case deals with new evidence that was not in existence at the time of the ALJ decision, *Moore* and *Bird* simply do not apply to the facts of this case and the Appeals Council did not err in not considering the new evidence. *See Campbell v. Astrue*, No. 2:11-cv-563, 2013 WL 1213057, at *9 (E.D. Va. March 1, 2013) ("In the present case, plaintiff is seeking remand based upon evidence that did not exist prior to the ALJ's determination, not upon evidence that was improperly not considered, as in *Bird*. Hence, *Bird* does not apply.").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11.) is **DENIED**, Defendant's Motion for Summary Judgment (Doc. No. 14.) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**. The Clerk's Office is directed to close this case.
**SO ORDERED.**

Signed: March 20, 2014

Graham C. Mullen
United States District Judge